UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHESTER GOTTSCHALCK AND WHITNEY GOTTSCHALCK, INDIVIDUALLY AND ON BEHALF OF THEIR DECEASED SON, L.G.** | * * * * * * * * * | **CIVIL ACTION NO: 2:19-cv-12399**<br><br>**SECTION: "E", MAG. 5**<br><br>**DISTRICT JUDGE**<br>    **SUSIE MORGAN**<br><br>**MAGISTRATE JUDGE**<br>    **MICHAEL B. NORTH** |
| **VERSUS** | * * | |
| **PRESCRIBED PEDIATRIC EXTENDED CARE, INC., AND EVANSTON INSURANCE COMPANY** | * * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendant, Prescribed Pediatric Extended Care, Inc. d/b/a Pediatric Health Choice (PHC), submits this Memorandum in Support of its Motion for Protective Order, and objects to Plaintiff's 30(b)(6) Notice of Corporate Deposition of PHC, Topic Numbers 7 and 8, and moves this Court for a protective order under Federal Rule of Civil Procedure 26(c) precluding these topics from PHC's corporate deposition.

**I.     BRIEF FACTUAL AND PROCEDURAL BACKGROUND**

PHC is an alternative-site health care service for medically complex children. It provides child-focused and family-oriented services for pediatric health care. PHC has facilities across several states. Plaintiffs' son, LG, is a former special needs patient of PHC at its Hammond, Louisiana facility.[1] LG was first admitted to PHC on August 2, 2016, at the approximate age of 15 months. He suffered from a multiple complex diagnosis of unknown etiology that resulted in severe global

---

[1] PHC's Hammond facility recently closed due to issues unrelated to this case.

1

cognitive and developments delays. He suffered with a seizure order present from birth, minimal suck/swallow reflux, aspiration, and allergies. LG was feeding tube dependent and required constant care. Although on anti-seizure medication at the time of admission, LG's medication was discontinued during 2017.

Plaintiffs' claims against PHC arise out of PHC's care and treatment of Plaintiff's son, LG, on September 11, 2018, and his eventual death on September 13, 2018. Plaintiffs filed their lawsuit on July 31, 2019, in the 21st Judicial District Court for the Parish of Tangipahoa. (*See* Petition, Rec. Doc. 1.) In their lawsuit, Plaintiffs allege that on February 1, 2018, PHC staff secured LG in his wheelchair with the back of the wheelchair facing the nurses' station. Plaintiffs allege that LG was subsequently found unresponsive and slumped down in his wheelchair with his chest harness tightly around his throat. PHC staff performed CPR, LG regained consciousness and was brought by his mother to the emergency department of North Oaks. Plaintiffs allege that after this event, PHC assured LG's mother that LG would be positioned so the nurses could monitor LG from the nurses' station and that he would not be left unattended and unsupervised in front of the television.

Plaintiffs allege that despite PHC's assurances, on September 11, 2018, a Licensed Practical Nurse (LPN) for Pediatric Health Choice placed LG in his wheelchair and left him unattended and unsupervised in front of the facility's television to check on another child and take care of laundry. When the LPN returned, she found LG unconscious and unresponsive. Plaintiffs allege that LG was allowed to "slide down" in his wheelchair which caused his chest harness straps to constrict tightly around his neck. Plaintiffs allege there was considerable down time before PHC staff initiated CPR efforts. LG was brought to North Oaks Medical Center and later transferred to Children's Hospital where he subsequently progressed to brain death and was declared deceased on September 13, 2018. Plaintiffs allege that LG's final diagnoses was brain death caused by asphyxiation due to a mechanical threat to breathing.

The Death Certificate issued by Tangipahoa Parish Coroner, Dr. Rick Foster, classified LG's death as an "accident" caused by "compression asphyxia due to probable seizure" and describes the mode of injury as follows: "while sitting in special needs wheelchair the child had seizure."

Plaintiffs allege that LG's death was the direct and proximate result of PHC's employees' tortious and negligent conduct. Plaintiffs set forth a number of acts and/or omissions by PHC and its staff to support their claims, including, failing to supervise employees; breaching the standard of medical care, failing to timely begin medical treatment/lifesaving procedures on LG, failing to timely request transport of LG to a hospital; failing to develop and adhere to an adequate plan of care for LG; failing to employ a sufficient number of qualified staff under applicable regulations; leaving LG unattended and unsupervised; failing to properly install/reapply LG's wheelchair harness; failing to properly secure LG in his wheelchair and failing to position his wheelchair to facilitate visualization of LG. In connection with these allegations, Plaintiffs assert claims against PHC for negligence, vicarious liability, a survival action, wrongful death and *Res Ipsa Loquitur*.

On September 25, 2019, PHC filed its Answer and Affirmative Defenses denying Plaintiff's allegations, including the alleged acts and/or omissions of negligence. (Rec. Doc. 9.) Subsequently, discovery commenced. PHC has retained three experts who refute Plaintiffs' claims and the opinion of Plaintiff's only expert who opines that PHC breached the standard of care and that LG was asphyxiated by his harness. Generally, PHC's experts opine that there was no breach of the standard of care by PHC, that LG did not asphyxiate because of his harness and/or any failure of PHC to properly secure same and that LG's death was the result of his complex medical history compromised by a failure, by his medical providers and parents, to recognize and adequately treat his seizure disorder. Although LG's medical provider recommended that LG restart anti-seizure medications after the incident in February 2018, at the time of his death, LG was not taking the medication prescribed by his physician.

To date, Plaintiffs have taken five (5) depositions and have requested and/or scheduled an additional six (6) depositions, including the 30(b)(6) deposition of PHC at issue.

On August 13, 2020, Plaintiffs served upon PHC, a 30(b)(6) Notice of Corporate Deposition setting forth eight (8) topics.[2] The Notice contains the following topics relevant to the instant motion:

> **7. Any and all lawsuits or claims against Defendant, Prescribed Pediatric Extended Care, Inc., including any of its affiliates, in the ten years prior to September 11, 2018;**
>
> **8. Any and all investigations of Defendant, Prescribed Pediatric Extended Care, Inc., including any of its affiliates, by any state regulatory agency, including, but not limited to, the Louisiana Department of Health and Hospitals, for the period of January 1, 2010, through December 31, 2019**;

(See Exhibit A.)

On August 24, 2020, counsel for PHC made a good faith effort to discuss his objections to Topic Numbers 7 and 8 and determine whether Plaintiffs' counsel would define "investigations" and agree to narrow the scope of the topics and information requested. (See Exhibit B).  However, Plaintiffs' counsel was unwilling to further define and/or narrow the scope of the inquiries.  (Id.) Thereafter, on September 8, 2020, counsel for PHC advised a motion for protective order would be filed on the foregoing topics. (Exhibit C.)  Plaintiffs' counsel responded the same day, stating to file the motion. (Id.)

Following the Court's General Order No. 20-10 dated August 20, 2020, pursuant to which all civil jury trials were suspended until January 1, 2021, and the Parties' Joint Motion to Continue Pretrial Deadlines (Rec. Doc. 48), this Court issued an amended Scheduling Order on September 3, 2020, setting forth new litigation cutoffs and a new trial date. (Rec. Doc 55.)  Pursuant to the Court's Scheduling Order, depositions shall be taken and all discovery shall be completed no later than

---

[2] PHC has produced a substantial number of documents responsive to Topic Numbers 1 through 6, which are not at issue in this motion.

4

September 29, 2020. [3] A jury trial is scheduled to commence January 19, 2021.

With the discovery deadline soon expiring, Plaintiff will have to secure PHC's corporate deposition before September 29, 2020 and on a date mutually agreeable to PHC's deponents. Accordingly, PHC seeks relief from the Court on an expedited basis and requests an issuance of a protective order precluding Topic Numbers 7 and 8 from Plaintiff's 30(b)(6) Notice.

II. **LAW & ARGUMENT**

    a. **A Protective Order for Topic Numbers 7 & 8 is Warranted under Rule 26(c)**

Pursuant Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery is defined as follows:

> Parties may obtain discovery regarding any **nonprivileged matter that is relevant** to any party's claim or defense **and proportional** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P.26(b)(1)(2015)(emphasis added.)

By its terms, Rule 26(b)(1) provides for the discovery of information that is both relevant to a party's claim or defense and proportional to the needs of the case. Fed.R.Civ.P. 26(b)(1). When determining relevance, this Court has held that the standard of discoverability under the current Rule 26, is more limited to direct relevance, as opposed to the previous version of Rule 26 that provided information is relevant if it is "likely to lead to the discovery of relevant evidence." *Rivera v. Robinson*, No. 18-14005, 2019 WL 6134190, at *4 (E.D. La. Nov. 19, 2019) (emphasis added.) The Committee Comments to Rule 26 confirm the rule's requirement that discovery is relevant to a claim or defense "signals to the court that it has the authority to confine discovery to the claims and

---

[3] A Joint Motion to Extend Discovery was filed September 10, 2020, in which the parties requested an additional 10 days until October 9, 2020, to complete discovery. (Rec. Doc. 59.) On September 10, 2020, the Court denied the motion. (Rec. Doc. 60.)

defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.,* No. 11-2405, 2017 WL 2271982, at *4 (E.D. La. May 24, 2017), *citing, Whitney v. Krystal Co.*, No. 10-773, 2012 WL 777161, at *1 (M.D. Ala. Mar. 7, 2012). To that end, courts have examined the "relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." *Thibodeaux v. Normand*, No. 13-5903, 2016 WL 7033674, at *3 (E.D. La. Dec. 1, 2016), citing, *Thibault v. BellSouth Telecommunications, Inc.*, No. 07-200, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008)(emphasis added.)  In addition, when assessing proportionality under Rule 26, courts have held that blanket discovery requests for "any and all" information or documents are impermissibly over broad. *Exxon Mobil Corp. v. U.S. Dept. of Interior,* 09-6732, 2010 WL 4668452, at*7 (E.D. La. Nov. 4, 2010); *Rice v. ReliaStar Life Ins. Co*., 11-44, 2011 WL 5513181, at *2 (M.D. La. Nov. 19, 2011) (court quashed subpoena requests for "any and all" documents relating to a particular subject on grounds requests were overbroad, amounted to a fishing expedition and failed to specify with particularity which documents were to be produced.")

Rule 26(b)(2)(C) vests the Court with the authority to limit discovery that is outside the scope of Rule 26(b)(1), irrelevant, duplicative, or can be obtained from another less burdensome source. Fed. R. Civ. P. 26(b)(2)(C). [4]  In addition, pursuant to Federal Rule of Civil Procedure 26(c), a party from whom discovery is sought may move for a protective order.  Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *Thomas v. Chambers,* No. 18-4373, 2019 WL 1544817, at *3 (E.D. La. April

---

[4] The 2015 amendments to Rule 26 were not a substantive change in the law; they were intended to reemphasis and "rein-force[ ] the Rule 26(g) obligation of the parties to consider [the proportionality factors] in making discovery requests, responses, or objections." Advisory Committee Notes to the 2015 Amendments to Rule 26 ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality....").

6

9, 2019), *citing, Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

Under Rule 26(c), upon a showing of good cause, the court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including forbidding the discovery, specifying the terms of discovery, forbidding inquiry into certain matters, and limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A)-(B), (D). The party seeking a protective order bears the burden of establishing good cause. *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 435 (5th Cir. 1990). The party must show "the necessity of its issuance, which contemplates a particular and specific demonstration of fact." *Cazaubon v. MR Precious Metals, LLC*, 14-2241, 2015 WL 4937888, at *2 (E.D. La. Aug. 17, 2015), *quoting In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). This Court has held "good cause" exists when the protective order is needed to prevent a specific, credible, potential injury. *Blanchard & Co. v. Barrick Gold Corp.*, 02-3721, 2004 WL 737485 at *4–6 (E.D. La. April 5, 2004), citing, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786–87 (3rd Cir. 1994).

In the context of a Rule 30(b)(6) notice, Rule 26(c) provides protection to a corporate deponent faced with objectionable areas of inquiry, such as those here. Rule 30(b)(6) requires that a party seeking the deposition of an organization "must describe with reasonable particularity the matters for examination." Fed.R.Civ. P. 30(b)(6).[5] When presented with a Rule 30(b)(6) deposition notice, the party named in the notice must either move for a protective order on each objectionable topic or designate a person to testify on the topics; failing to appear and testify as to the designated topics is not excused on grounds the discovery sought is objectionable, <u>unless</u> the party has a pending

---

[5] "For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are <u>relevant to the issues in dispute</u>. Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Dennis v. United States*, No. 16-3148, 2017 WL 4778708, at *8 (N.D. Tex. Oct. 23, 2017), *citing*, *Hartford Fire Ins. Co. V. P & H Cattle Co.*, No. 05-cv-2001, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009)(emphasis added.)

motion for a protective order under Rule 26(c). Fed. R.Civ.P. 37(d)(2)(emphasis added.) Under Rule 26(c), a court may limit a Rule 30(b)(6) deposition notice to the extent it requests the designated deponent to testify on topics that are overly broad, vague, or ambiguous. *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous.)

Here, good cause exists for a protective order to preclude Topic Numbers 7 and 8 from Plaintiffs' 30(b)(6) Notice of Corporate Deposition. As shown, Topic Numbers 7 and 8 are indisputably overly broad, vague, unduly burdensome, prejudicial and seek information neither relevant to Plaintiffs' claims nor proportional to the needs of this case. Topic Numbers 7 and 8 lack proper temporal and/or geographical limitations; they are not tailored in any way to the allegations or claims in Plaintiffs' complaint, the facility at issue, any relevant time period regarding LG's admission as a patient at PHC's Hammond facility, to PHC's Hammond facility or to PHC itself. As a result, Topic Numbers 7 and 8 clearly exceed the scope of discovery permitted under Rule 26(b)(1). Under Rule 26(c), a protective order is warranted and these topics should be precluded.

### b. **Plaintiffs' 30(B)(6) Objectionable Topics**

Plaintiffs' 30(b)(6) Notice of Corporate Deposition Topic Number 7 reads:

7. **Any and all lawsuits or claims against Defendant, Prescribed Pediatric Extended Care, Inc., including any of its affiliates, in the <u>ten</u> years prior to September 11, 2018**;

Topic Number 7 exceeds the scope of discovery permitted under Rule 26(b)(1). First, the information sought is not proportional to Plaintiffs' claims or needs of the case. Topic Number 7 seeks "any and all lawsuits or claims" against PHC and "any of its affiliates" for the 10-year period

8

before the incident at issue. On its face, Topic Number 7 is impermissibly overbroad.[6] To be sure, there are no temporal limitations on the nature or basis of the requested lawsuits or claims sought; the scope of the request is not limited to similar claims, PHC itself, or a relevant time. Likewise, there are no geographical limits on the request; it is not limited to PHC's Hammond facility or PHC's facilities in Louisiana.

Second, and notwithstanding the lack of temporal and geographical limitations, Topic Number 7 seeks information wholly irrelevant to Plaintiffs' claims. Courts have held that evidence of other claims and lawsuits amount to nothing more than "a summary of allegations by others" which constitute hearsay and are inadmissible. *Comardelle v. Sears, Roebuck and Co.*, 1996 WL 673971, at *3 (E.D.La. Nov. 20, 1996), *quoting, Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993). Courts have also found such evidence is not relevant under Rule 26(b)(1) because the requested information is unrelated to the claims and defenses in the case. *See Mattingly v. Credit Management, LP*, 2005 WL 3271683, at *1 (D.Colo. June 7, 2005), *citing, Johnson*, 988 F.2d at 579). Courts have also found that any purported probative value of such evidence is far outweighed by the prejudicial nature of the information. See *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408–09 (5th Cir. 2004) (holding that district court did not abuse its discretion by excluding evidence of past lawsuits because any probative value was outweighed by its prejudicial nature and had a "tendency to confuse the jury with tangential litigation"); *Chet Morrison Contractors, Inc. v. Medco Energi US LLC,*, No. 08-1638, 2009 WL 2762049, at *4–5 (E.D. La. Aug. 25, 2009)(court granted motion to quash 30(b)(6) notice topic that sought information regarding every lawsuit or other judicial proceeding in which the company, its shareholders, officers, or directors were ever involved.)

---

[6] A request for "any and all lawsuits and claims" is does not satisfy the requirement under Rule 30(b)(6) to "describe with reasonable particularity" the matters for examination. Fed.R.Civ.P. 30(b)(6).

Plaintiffs' claims arise out of the alleged acts/omissions of PHC and/or its employees in connection with the care and treatment of a specific patient, LG, during a specific time period in September 2018, at a specific PHC facility located in Hammond, Louisiana. Whether there have been any other lawsuits or claims involving other issues and/or patients, against PHC, its employees or other affiliates located in other states, during the 10-years before the incident at issue, is wholly irrelevant to Plaintiffs' claim that PHC and/or its employees were negligent in their care and/or treatment of LG on September 11, 2018 in Hammond, Louisiana.

A protective order under Rule 26(c) is warranted for Topic Number 7, and it should be precluded from Plaintiffs' 30(b)(6) Notice.

Plaintiffs' 30(b)(6) Notice of Corporate Deposition Topic Number 8 reads:

8. **Any and all investigations of Defendant, Prescribed Pediatric Extended Care, Inc., including any of its affiliates, by any state regulatory agency, including, but not limited to, the Louisiana Department of Health and Hospitals, for the period of January 1, 2010, through December 31, 2019.**

Topic Number 8 exceeds the scope of discovery permitted under Rule 26(b)(1); it is disproportional to Plaintiffs' claims. Topic Number 8 seeks "any and all investigations" by "any state regulatory agency" for a 9-year period (8 years prior to the incident at issue and 1 year post-incident). Like Topic Number 7, Topic Number 8 is impermissibly overbroad on its face.[7] To be sure, there are no temporal limitations on the nature or basis of the requested "investigations." The requested information is not limited in any manner to a time relevant to Plaintiffs' claims, LG.'s time as a patient at the Hammond facility, the Hammond facility, PHC's facilities in Louisiana or PHC itself.  Critically, Topic Number 8 categorically fails to provide any definition for the term "investigations" and, with the exception of identifying LDHH, it fails to define or identify the other proposed "state regulatory agencies."

---

[7] *See*, fn. 5.

As a corporation, PHC includes three (3) states – Florida, Louisiana, Mississippi, and seventeen (17) centers. PHC's two affiliates, Pediatric Health Choice at Lauren's House and Pediatric Health Choice at The Children's Secret Garden, operate four (4) additional centers in two (2) additional states, Pennsylvania and Delaware.  Each state in which PHC's facilities are located has its own licensing entity: The Agency for Healthcare Administration (AHCA) regulates PHC's (11) centers in Florida; the Louisiana Department of Health (LDH) regulates PHC's four (4) centers in Louisiana; the Mississippi State Department of Health (MSDH) regulates PHC's two (2) centers in Mississippi; the Pennsylvania Department of Health (DOH) regulates PHC's affiliates three (3) centers in Pennsylvania and the Office of Child Care Licensing (OCCL) regulates PHC's affiliate's one (1) center in Delaware.  As a result, each center operates in compliance with the respective state licensing standards. Likewise, each state has its own child protection/ child welfare/ family and/or human services agencies and/or departments, which have authority to monitor and investigate PHC's facilities. Local police and sheriffs vary for each state, city, county, parish, municipality and/or region where PHC facilities are located.  Therefore, to comply with Topic Number 8 for purposes of Rule 30(b)(6), PHC's corporate deponent would be required to provide testimony and/or documents regarding "any and all investigations" of <u>any</u> kind of PHC, and its affiliates, based on <u>any</u> issue that may involve the regulations, laws and/or standards of five different states, by the various agencies and/or departments within those five states, over a 9 year period.  Clearly, the over breadth of this Topic renders compliance virtually impossible.

Notwithstanding, and even if narrowed to PHC's Hammond facility, LDHH surveys or a relevant period, Topic Number 8 nevertheless seeks information entirely irrelevant to Plaintiffs' claims.  Again, this case concerns the alleged negligence of PHC employees in connection with the treatment and/or care of LG on September 11, 2018 at PHC's Hammond Louisiana facility. Notably, while LDHH conducted a survey of PHC's Hammond facility in connection with the

incident, LDHH found <u>no</u> breach of the standard of care and <u>no</u> regulatory or statutory violations and <u>no</u> deficiencies by PHC in connection with the care of LG on September 11, 2018.  Therefore, whether LDHH may have conducted other investigations of PHC's Hammond facility with regard to other patients or issues with the facility, 8 years before the incident at issue and 1 year after, has absolutely no relevance to the issues or claims in this case, particularly considering that the LDHH investigation of PHC relevant to the incident at issue found no violations or breach of the standard of care.

A protective order under Rule 26(c) is warranted for Topic 8 and it should be precluded from Plaintiff's 30(b)(6) Notice.

### III.    CONCLUSION

Rule 26(b)(1) provides for the discovery of information that is relevant and proportional to the needs of the case. Rule 30(b)(6) requires a party seeking the deposition of an organization to describe with reasonable particularity the matters for examination that are relevant to the issues in dispute.  As demonstrated above, Topic Numbers 7 and 8 in Plaintiffs' 30(b)(6) Notice of Deposition fail to satisfy the requirements of either rule. PHC's good faith effort to narrow the scope of Topic Numbers 7 and 8 has been met an unwillingness to compromise. Accordingly, PHC respectfully requests that this Court consider this motion on an expedited basis and enter a protective order precluding Topic Numbers 7 and 8 from Plaintiff's 30(b)(6) Notice of Corporate Deposition and the upcoming corporate deposition of PHC.  PHC also requests all other relief to which it may be entitled in having to bring this motion.

### **RULE 26 CERTIFICATE OF EFFORTS TO RESOLVE DISCOVERY DISPUTE**

PHC has attached hereto for the Court's review, as Exhibits B and C, the email exchange between Plaintiffs' counsel and counsel for PHC outlining good faith efforts to resolve this dispute, without the need for Court intervention. As the Parties have been unable to reach an amicable

resolution, the filing of this Motion for Protective Order was required.

> Respectfully submitted:
>
> */s/ Allen J. Krouse, III*
> ALLEN J. KROUSE, III (La. Bar #14426)
> SUZANNE M. RISEY (La. Bar #25488)
> FRILOT LLC
> 1100 Poydras Street, Suite 3700
> New Orleans, Louisiana  70163
> Telephone:  (504) 599-8000
> Fax:  (504) 599-8100
> Email:  akrouse@frilot.com
> Email:  srisey@frilot.com
> *Attorneys for Prescribed Pediatric Extended Care, Inc. d/b/a Pediatric Health Choice (PHC)*

## **CERTIFICATE OF SERVICE**

I certify that on this the 11th day of September 2020, a copy of the above and foregoing pleading has been served upon counsel of record for all parties via CM/ECF transmission through the United States District Court for the Eastern District of Louisiana.

> */s/ Allen J. Krouse, III*